J-S10040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.B.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.L.S., JR. | : | No. 1188 MDA 2020 |

Appeal from the Order Entered August 11, 2020
In the Court of Common Pleas of York County Domestic Relations at
No(s): 00021 SA 2019,
PACSES No. 586117413

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:  **FILED JUNE 15, 2021**

J.B.S. (Grandmother) appeals from the order entered in the Court of Common Pleas of York County determining that J.L.S., Jr. (Grandfather) is not obligated to pay child support to Grandmother for the benefit of his two biological grandsons, J.T., Jr. (born 9/06) and S.S. (born 4/09) (collectively, Children). We affirm.

**I.**

**A.**

The underlying facts of this case are as follows. In 2009, Grandfather's son, J.T., and Children's mother, R.M., moved into the Grandmother's and Grandfather's (the parties) home with Children. In 2010, J.T. was convicted

_____

[*] Retired Senior Judge assigned to the Superior Court.

of third-degree murder involving the death of his former girlfriend's eleven-month-old child and was sentenced to a lengthy term of incarceration in Maryland. R.M. left the parties' home in 2010 and she has been arrested on several occasions for drug-related offenses. R.M. does not have any contact with Children.

On May 28, 2010, the parties filed a complaint seeking custody of Children based on the inability of J.T. and R.M. to care for them. R.M. signed a handwritten document assenting to the custody arrangement. On January 12, 2011, the parties were granted sole legal and physical custody of Children. Although R.M. was ordered to make child support payments in 2012, no payments were made.

Grandfather is employed at Florida Handling Systems as a service manager and his annual net income is $90,000.00. Grandmother worked at Wal-Mart for many years earning approximately $33,061.00 per year. She has significant medical issues affecting her ability to work and walk and she receives disability payments.

**B.**

On October 31, 2018, Grandfather filed a complaint in divorce and initiated the instant custody action. The trial court issued an interim custody order in December 2018 granting the parties shared legal custody, Grandmother primary physical custody and Grandfather partial physical

custody of Children. This custody order was later amended by the parties to implement a schedule of shared 50/50 physical custody of Children.

On April 15, 2019, the trial court, with The Honorable Amber Kraft presiding, entered an order without a hearing granting Grandmother's petition seeking child support from Grandfather. Following a status conference in May 2019, the trial court rescinded the order and directed the parties to file briefs regarding Grandfather's child support obligation while they litigated equitable distribution claims arising out of the divorce. On June 11, 2019, the trial court ordered Grandfather to pay $64.60 bi-weekly in child support and $309.91 monthly in spousal support.

The parties sought *de novo* review and the trial court, with The Honorable Kathleen J. Prendergast presiding, held hearings on the support issue on November 25, 2019, and January 29, 2020. The trial court issued an opinion and order on May 11, 2020, stating that it was "constrained by the recent case [**S.R.G. v. D.D.G.**, 224 A.3d 368, 369 (Pa. Super. 2019), *appeal denied*, 231 A.3d 772 (Pa. 2020)] to find that [Grandfather] is not liable to [Grandmother] for child support." (Trial Court Opinion, 5/11/20, at 13).[1] On

_____

[1] As discussed more fully *infra*, the **S.R.G.** Court addressed the obligation of grandparents with regard to child support for their grandchildren and this Court affirmed the trial court's determination that grandfather did not have a duty to provide child support payments to grandmother for the benefit of their grandchild.

August 11, 2020, the trial court vacated any prior orders stating that Grandfather was obligated to pay child support. This timely appeal followed.

**II.**

**A.**

Grandmother first contends the trial court's ruling that Grandfather has no child support obligation for Children violates the law of the law of case doctrine because it is inconsistent with Judge Kraft's April 15, 2019 order stating that he is financially responsible,[2] as well as being barred by the doctrines of *res judicata* and collateral estoppel.

Law of the case, *res judicata* and collateral estoppel involve the effect of a prior decision on a future decision in the same or different cases.

> Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. The doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein. Similarly, [t]he doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit.

---

[2] "When evaluating a child support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. . . . In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." **T.M.W. v. N.J.W.**, 227 A.3d 940, 944 (Pa. Super. 2020), *appeal denied*, 239 A.3d 1087 (Pa. 2020) (citation omitted).

> **While *res judicata* and collateral estoppel apply to bar relitigation of claims or issues in a subsequent action that were subject to a final judgment in a prior action, the law of the case doctrine exists to prevent a party from relitigating claims or issues that have been resolved previously within the same action, either in a prior appeal or by a judge of coordinate jurisdiction**.  Among rules that comprise the law of the case doctrine are that:  (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.
>
> All three doctrines are based upon similar policy determinations, including the idea that a party should not get a second bite at the apple when he or she had a **full and fair** opportunity the first time.

***Pollock v. Nat'l Football League***, 171 A.3d 773, 781 (Pa. Super. 2017) (citations omitted; emphases added).

Regarding Grandmother's contention that the law of the case doctrine prevents Grandfather from relitigating the child support claim, it is apparent from the record that the initial child support orders entered by the trial court were not final orders.  These orders preceded the full substantive hearings on the support issue held before Judge Prendergast in November 2019 and January 2020.  Because Judge Kraft issued no final determination on the merits concerning Grandfather's child support obligation, the law of the case doctrine does not apply.

For the same reason, the denial of Grandmother's request that Grandfather be ordered to pay child support is not barred by *res judicata* or collateral estoppel because there was no final order. Moreover, neither doctrine is applicable because those doctrines bar relitigation of claims in a **subsequent action** that were subject to a final judgment in a prior or different action. In this case, no subsequent action is implicated because Grandmother is challenging the trial court's final child support order as inconsistent with an earlier ruling by a different judge within the same action.

Because Judge Prendergast made the final judicial determination regarding Grandfather's child support obligation after consideration of the parties' testimony and pertinent legal authority, we conclude there was no prior legal resolution in the case that was overruled by the final child support order on August 11, 2020. Grandmother's claim to the contrary merits no relief.

**B.**

Grandmother next contends the trial court erred in interpreting ***S.R.G.***, ***supra*** as binding precedent where ***S.R.G.*** is readily distinguishable from this case on its facts. She maintains that ***S.R.G.*** involved a grandfather who had not assumed a parental role and was merely gratuitously providing for the grandchild. In contrast, she claims, Grandfather took on a full parental role with Children and pursued custody of them which made him responsible for the associated support obligation.

Pennsylvania law is clear that the parents of a child have a duty to support that child financially. *See* 23 Pa.C.S. § 4321(2). However, there is no express statutory requirement imposing on a grandparent a duty to support a grandchild. *See S.R.G.*, *supra* at 370.

In *S.R.G.*, the grandmother requested child support payments from grandfather for the care of their daughter's child. Before the parties' divorced, they sought and were awarded legal and primary physical custody of the child. Child's mother had a history of mental illness and was not capable of raising the child. Child's father had never been involved in the child's life and was serving a lengthy prison sentence. However, neither parents' parental rights to the child had been terminated or relinquished.

After grandmother relocated to Florida, grandfather exercised partial physical custody of the child during summers and schools breaks and the parties shared legal custody. This Court affirmed the trial court's determination that grandfather did not have a duty to provide child support payments to grandmother for the benefit of the child. The Court found that grandfather had not "become a full parent to the child, but rather gratuitously assumed the burdens of custody" where both of the child's biological parents were unfit. *Id.* at 372. It further held that "[t]here is simply no statutory authorization presently in Pennsylvania extending the duty of child support between two third parties, where neither party has adopted the child, and the natural parents have not had their parental rights terminated." *Id.*

In this case, Grandfather testified that he did not legally adopt Children. (**See** N.T. Hearing, 1/29/20, at 19-20). The parties identified Children as their grandchildren when they registered for school and the state provides the Children with health insurance. The record reflects that Grandfather did not become a full parent to Children. Instead, Grandmother and Grandfather attempted to fill the large parental void left by J.T., who remains incarcerated, and R.M., who essentially abandoned her Children. Under these circumstances and in light of this Court's decision in **S.R.G.**, we discern no abuse of discretion in the trial court's ruling that Grandfather is not legally obligated to pay child support to Grandmother.

Order affirmed.

Judge Murray joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021